Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Danielle S. Yamali (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:     (212) 292-5391

Brian Igel (BI 4574)
bigel@bilawfirm.com
BELLIZIO + IGEL PLLC
One Grand Central Place
305 Madison Avenue, 40th Floor
New York, New York 10165
Telephone:    (212)873-0250
Facsimile:     (646)395-1585
*Attorneys for Plaintiff*
*Off-White LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OFF-WHITE LLC,<br><br>*Plaintiff*<br><br>v.<br><br>BEIJING YINYU TRADING CO., LTD., CHENGDU SHANGKE TECHNOLOGY CO., LTD., DISCOVER-CASE STORE, DONGGUAN CITY HUMEN ZHONGSHENG WEAVING FACTORY, DONGGUAN HUAYU TECHNOLOGY CO., LTD., DONGGUAN MANXUN CLOTHING CORPORATION LTD., FLAWLESS STORE, GUANGZHOU 100 PERCENT CLOTHING CO., LTD., GUANGZHOU DURCASE WIRELESS CO., LTD., GUANGZHOU IDEAL ELECTRONIC TECHNOLOGY LIMTED, GUANGZHOU MC GARMENT ACCESSORIES CO., LTD., HANGZHOU LIN'AN ORIGIN TRADING CO., LTD., JIANGMEN CITY SUNFEI SPORTS CO., | 20-cv-7894 (LTS)<br><br>**PRELIMINARY INJUNCTION ORDER** |

LTD., JIANGXI KAIMEI GARMENT CO., LTD., JIATIANXIA TECHNOLOGY (SHENZHEN) CO., LTD., NEWO (SHENZHEN) TECHNOLOGY CO., LTD., NINGBO HAISHU YINGLI INTERNATIONAL TRADING CO., LTD., QUALITY PRODUCTS MANUFACTURE CO., LTD, SHENZHEN 3 TAKINS TRADING CO., LTD., SHENZHEN AGATHA TECH CO., LTD., SHENZHEN AIMAX INTELLIGENT TECHNOLOGY CO., LTD., SHENZHEN AINTE TECHNOLOGY CO., LTD., SHENZHEN AOTEMAO TECHNOLOGY CO., LTD., SHENZHEN CHENGYI HARDWARE CRAFT ACCESSORIES CO., LTD., SHENZHEN CHENHONG GIFTS CO., LTD., SHENZHEN CITY GECOOL ELECTRONIC TECHNOLOGY LIMITED COMPANY, SHENZHEN DOWNWIND TECHNOLOGY CO., LTD., SHENZHEN FIBERCHENG ELECTRONICS CO., LTD., SHENZHEN HAOXI YANG TRADING CO., LTD., SHENZHEN HENGYUE GIFTS CO., LTD., SHENZHEN JARY TECHNOLOGY CO., LTD., SHENZHEN JEZZ LIFE TECHNOLOGY CO., LTD., SHENZHEN KAILEEX TECHNOLOGY CO., LTD., SHENZHEN PXB TECHNOLOGY CO., LTD., SHENZHEN SIYUANDA TECHNOLOGY CO., LTD., SHENZHEN WANYANG GIFT CO., LTD., SHENZHEN XCZH TECHNOLOGY CO., LTD., SHENZHEN XIN SHENG RONG TRADING CO., LTD., SHENZHEN XINYUHONGSHENG TRADE CO., LTD., SHENZHEN YUEFENG TECHNOLOGY CO., LTD, SHOP3484013 STORE, SHOP5361124 STORE, SHOP900237396 STORE, SICHUAN LAIYUANYIFANG TRADING CO., LTD, STARS ST GLASSES STORE, WADE GROUP COMPANY LIMITED, YIWU BEYOND BELT LIMITED COMPANY, YIWU GUANLONG GARMENT ACCESSORIES CO., LTD., YIWU HOHI JEWELRY CO., LTD., YIWU KAIWEN PLASTIC PRODUCTS CO., LTD., YIWU MENGSHOU ELECTRONIC COMMERCE CO., LTD., YIWU YIMING E-COMMERCE FIRM, YIWU YOUWEI APPAREL CO., LTD., YIWU ZHAOYUAN NEW MATERIALS CO., LTD. AND ZHONGSHAN CAIYING TEXTILE CO., LTD.,

*Defendants*

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or Off-White** | Off-White LLC |
| **Defendants** | Beijing Yinyu Trading Co., Ltd., Chengdu Shangke Technology Co., Ltd., Discover-case Store, Dongguan City Humen Zhongsheng Weaving Factory, Dongguan Huayu Technology Co., Ltd., Dongguan Manxun Clothing Corporation Ltd., Flawless Store, Guangzhou 100 Percent Clothing Co., Ltd., Guangzhou Durcase Wireless Co., Ltd., Guangzhou Ideal Electronic Technology Limted, Guangzhou MC Garment Accessories Co., Ltd., Hangzhou Lin'an Origin Trading Co., Ltd., Jiangmen City Sunfei Sports Co., Ltd., Jiangxi Kaimei Garment Co., Ltd., Jiatianxia Technology (Shenzhen) Co., Ltd., Newo (Shenzhen) Technology Co., Ltd., Ningbo Haishu Yingli International Trading Co., Ltd., Quality Products Manufacture Co., Ltd, Shenzhen 3 Takins Trading Co., Ltd., Shenzhen Agatha Tech Co., Ltd., Shenzhen Aimax Intelligent Technology Co., Ltd., Shenzhen Ainte Technology Co., Ltd., Shenzhen Aotemao Technology Co., Ltd., Shenzhen Chengyi Hardware Craft Accessories Co., Ltd., Shenzhen Chenhong Gifts Co., Ltd., Shenzhen City Gecool Electronic Technology Limited Company, Shenzhen Downwind Technology Co., Ltd., Shenzhen Fibercheng Electronics Co., Ltd., Shenzhen Haoxi Yang Trading Co., Ltd., Shenzhen Hengyue Gifts Co., Ltd., Shenzhen Jary Technology Co., Ltd., Shenzhen Jezz Life Technology Co., Ltd., Shenzhen Kaileex Technology Co., Ltd., Shenzhen PXB Technology Co., Ltd., Shenzhen Siyuanda Technology Co., Ltd., Shenzhen Wanyang Gift Co., Ltd., Shenzhen XCZH Technology Co., Ltd., Shenzhen Xin Sheng Rong Trading Co., Ltd., Shenzhen Xinyuhongsheng Trade Co., Ltd., Shenzhen Yuefeng Technology Co., Ltd, Shop3484013 Store, Shop5361124 Store, Shop900237396 Store, Sichuan Laiyuanyifang Trading Co., Ltd, Stars ST Glasses Store, WADE GROUP COMPANY LIMITED, Yiwu Beyond Belt Limited Company, Yiwu Guanlong Garment Accessories Co., Ltd., Yiwu Hohi Jewelry Co., Ltd., Yiwu Kaiwen Plastic Products Co., Ltd., Yiwu Mengshou Electronic Commerce Co., Ltd., Yiwu Yiming E-Commerce Firm, Yiwu Youwei Apparel Co., Ltd., Yiwu Zhaoyuan New Materials Co., Ltd. and Zhongshan Caiying Textile Co., Ltd. |
| **Alibaba** | Alibaba.com, an online marketplace platform that allows manufacturers, wholesalers and other third- |

i

| | |
|---|---|
| | party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **AliExpress** | Aliexpress.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint filed on September 24, 2020 |
| **Application** | Plaintiff's *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery filed on September 24, 2020 |
| **Abloh Dec.** | Declaration of Virgil Abloh in Support of Plaintiff's Application |
| **Yamali Dec.** | Declaration of Danielle S. Yamali in Support of Plaintiff's Application |
| **Off-White Products** | A young, successful luxury fashion label founded by American creative designer Virgil Abloh, specializing in season to season men's and women's lifestyle and high-end streetwear, as well as shoes, accessories, jewelry, and other ready-made goods |
| **Off-White Registrations** | U.S. Trademark Registration Nos.: 5,119,602 for "OFF WHITE" for a variety of goods in Class 25 with a constructive date of first use of January 25, 2012, 5,713,397 for "OFF-WHITE" for a variety of goods in Class 25, 5,710,328 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 9, 5,572,836 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 25, 5, 710,287 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 14, 5,150,712 for ▨ for a variety of goods in Class 18 and 25, 5, 710,288 for ▨ for a variety of goods in |

ii

| | |
|---|---|
| | Class 14, 5,307,806 for [mark], for a variety of goods in Class 18 and 25, 5,835,552 for [mark], for a variety of goods in Class 9, 5,387,983 for [mark], for a variety of goods in Class 25, 5,445,222 for [mark], for a variety of goods in Class 25, 5,800414 for [mark], for a variety of goods in Class 9 and 25, 5,681,805 for [mark], for a variety of goods in Class 9 and 5,663,133 for [mark], for a variety of goods in Class 25 |
| **Off-White Applications** | U.S. Trademark Serial Application Nos.: 88/080,002 for [mark], for a variety of goods in Class 25 and 88/041,456 for [mark], for a variety of goods in Class 18 and Class 25 |
| **Off-White Marks** | The Marks covered by the Off-White Registrations and Off-White Applications |
| **Counterfeit Products** | Products bearing or used in connection with the Off-White Marks, and/or products in packaging and/or containing labels bearing the Off-White Marks, and/or bearing or used in connection with marks that are confusingly similar to the Off-White Marks and/or products that are identical or confusingly similar to the Off-White Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Alibaba, AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants |

| | |
|---|---|
| | and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by Alibaba, AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

WHERAS, Plaintiff having moved *ex parte* on September 24, 2020 against Defendants for the following: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery;

WHEREAS, the Court entered an Order granting Plaintiff's Application on September 29, 2020 (Docket Entry No. 21, the "TRO") which ordered Defendants to appear on October 30, 2020 at 3:30 p.m. to show cause why a preliminary injunction should not issue ("Show Cause Hearing");

WHEREAS, on October 14, 2020, pursuant to the alternative methods of service authorized by the TRO, Plaintiff served the Summons, Complaint, TRO and all papers filed in support of the Application on each and every Defendant, except Defendant GHH11 Store;

WHEREAS, on October 27, 2020, the Court issued an Order extending the TRO pending the resolution of Plaintiff's motion for a preliminary injunction (Docket Entry No. 27, the "October 27, 2020 Order");

WHEREAS, on the same day, October 27, 2020, pursuant to the alternative methods of service authorized by the TRO, Plaintiff served the October 27, 2020 Order on each and every Defendant, except Defendant GHH11 Store;

WHEREAS, on October 30, 2020 at 3:30 p.m., Plaintiff appeared at the Show Cause Hearing, however, no Defendants opposed the entrance of the injunctive relief.

**ORDER**

1. This injunctive relief shall not apply to Defendant GHH11 Store.[1]
2. The injunctive relief previously granted in the TRO shall remain in place through the

---

[1] Defendant GHH11 Store was voluntarily dismissed from the action on November 6, 2020. (Dkt. 33.)

pendency of this litigation, and issuing this Order is warranted under Federal Rule of Civil Procedure 65 and Section 34 of the Lanham Act. Based on the factual showings made by Plaintiff, it appears that Defendants have been selling Counterfeit Products in violation of the Lanham Act. Therefore, the Court finds that the requirements for the issuance of a preliminary injunction are met: (1) there is a likelihood that Plaintiff will be successful on the merits of its claims; (2) there is a likelihood of irreparable harm to Plaintiff if the injunctive relief does not issue; (3) the balance of the equities favors Plaintiff, whose business, goodwill, and reputation associated with the Off-White Marks are harmed by the continued sale of Counterfeit Products, whereas there would appear to be little harm to Defendants if the injunctive relief is granted, since Defendants are only ordered to do that which they are required to do under the Lanham Act; and (4) the public interest would be furthered by the granting of injunctive relief, as such would protect Plaintiff's interest in its trademarks and protect consumers from being deceived by the Counterfeit Products and defrauded by Defendants.

a) Accordingly, Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

   i. manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products or any other products bearing one or more of the Off-White Marks and/or marks that are confusingly similar to, identical to and constitute a counterfeiting and/or infringement of the Off-White Marks;

   ii. directly or indirectly infringing in any manner any of Plaintiff's Off-White

        Marks;

iii. using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Off-White Marks to identify any goods or services not authorized by Plaintiff;

iv. using any of Plaintiff's Off-White Marks or any other marks that are confusingly similar to the Off-White Marks on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products;

v. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities and Plaintiff;

vi. secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to their User Accounts, Merchant Storefronts or Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit

      Products;

   vii. effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, User Account, Merchant Storefront or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

   viii. knowingly instructing, aiding or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 2(a)(i) through 2(a)(vii) above and 2(b)(i) through 2(b)(ii) and 2(c)(i) below.

b) Accordingly, the Third Party Service Providers and Financial Institutions are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

   i. secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court;

   ii. secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with any computer files, data, business records, documents or any other records or evidence relating to the Defendants' User Accounts, Merchant Storefronts, Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products; and

      iii. knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 2(a)(i) through 2(a)(vii) and 2(b)(i) through 2(b)(ii) above.

  c) Accordingly, the Third Party Service Providers are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

      i. providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts insofar as they are connected to the Counterfeit Products;

      ii. secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with any computer files, data, business records, documents or any other records or evidence relating to the Defendants' User Accounts, Merchant Storefronts, Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products; and

      iii. knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 2(a)(i) through 2(a)(vii), 2(b)(i) through 2(b)(ii) and 2(c)(i) through 2(c)(ii) above.

3. As sufficient cause has been shown, the asset restraint granted in the TRO shall remain in place through the pendency of this litigation, including that:

  a) within seven (7) days of receipt of notice of this Order, any newly discovered Financial Institutions who are served with this Order shall locate and attach Defendants'

   Financial Accounts, shall provide written confirmation of such attachment to Plaintiff's counsel and provide Plaintiff's counsel with a summary report containing account details for any and all such accounts, which shall include, at a minimum, identifying information for Defendants and Defendants' User Accounts, contact information for Defendants (including mailing addresses and e-mail addresses), account numbers and account balances for any and all of Defendants' Financial Accounts.

4. As sufficient cause has been shown, the expedited discovery previously granted in the TRO shall remain in place through the pendency of this litigation, including that:

   a) Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendants who are served with this Order shall provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiff's counsel.

   b) Plaintiff may serve requests for the production of documents pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Defendants who are served with this Order shall produce all documents responsive to such requests that are in their control, including such documents as are in the custody of their respective officers, employees, agents, servants and attorneys and all persons in active concert or participation with any of them, within fourteen (14) days of service to Plaintiff's counsel.

   c) Within fourteen (14) days after receiving notice of this Order, all Financial Institutions who receive service of this Order shall provide Plaintiff's counsel with all documents and records in their possession, custody or control (whether located in the U.S. or abroad), relating to any and all of Defendants' Financial Accounts, User Accounts and

Merchant Storefronts, including, but not limited to, documents and records relating to:

i. account numbers;

ii. current account balances;

iii. any and all identifying information for Defendants and Defendants' User Accounts, including names, addresses and contact information;

iv. any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents, and if a business entity, any and all business documents provided for the opening of each and every of Defendants' Financial Accounts;

v. any and all deposits and withdrawal during the previous year from each and every of Defendants' Financial Accounts and any and all supporting documentation, including, but not limited to, deposit slips, withdrawal slips, cancelled checks and account statements;

vi. any and all wire transfers into each and every of Defendants' Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the identity of the beneficiary's bank and the beneficiary's account number;

vii. any and all User Accounts and account details, including, without limitation, identifying information and account numbers for any and all User Accounts that Defendants have ever had and/or currently maintain;

viii. the identities, location and contact information, including any and all e-mail addresses, of Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them;

      ix.    the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' User Accounts, a full accounting of Defendants' sales history and listing history under such accounts, and Defendants' Financial Accounts associated with Defendants' User Accounts; and

      x.    Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Counterfeit Products, or any other products bearing the Off-White Marks and/or marks that are confusingly similar to, identical to and constitute a counterfeiting and/or infringement of the Off-White Marks.

d) Within fourteen (14) days of receipt of service of this Order, the Third Party Service Providers shall provide to Plaintiff's counsel all documents and records in its possession, custody or control (whether located in the U.S. or abroad) relating to Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, documents and records relating to:

      i.    any and all User Accounts and Defendants' Merchant Storefronts and account details, including, without limitation, identifying information and account numbers for any and all User Accounts and Defendants' Merchant Storefronts that Defendants have ever had and/or currently maintain with the Third Party Service Providers;

      ii.    the identities, location and contact information, including any and all e-mail addresses of Defendants;

    iii.    the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' User Accounts and Defendants' Merchant Storefronts, a full accounting of Defendants' sales history and listing history under such accounts and Defendants' Financial Accounts with any and all Financial Institutions associated with Defendants' User Accounts and Defendants' Merchant Storefronts; and

    iv.    Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Counterfeit Products, or any other products bearing one or more of the Off-White Marks and/or marks that are confusingly similar to, identical to and constitute an infringement of the Off-White Marks.

5. As sufficient cause has been shown, and pursuant to FRCP 4(f)(3), service may be made on, and shall be deemed effective as to Defendants if it is completed by one of the following means:

a)    delivery of: (i) PDF copy of this Order, or (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download a PDF copy of this Order to Defendants' e-mail addresses to be determined after having been identified by Alibaba and/or AliExpress pursuant to Paragraph V(C) of the TRO; or

b)    delivery of a message to Defendants through the system for communications established by the Third Party Service Providers on their respective platforms,

   providing a link to a secure website (such as NutStore or a large mail link created through Rmail.com) where each Defendant will be able to download a PDF copy of this Order.

6. As sufficient cause has been shown, that such alternative service by electronic means ordered in the TRO and herein shall be deemed effective as to Defendants, Third Party Service Providers and Financial Institutions through the pendency of this action.

7. As sufficient cause has been shown, service of this Order shall be made on and deemed effective as to the Third Party Service Providers and Financial Institutions if it is completed by the following means:

   a) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal will be able to download a PDF copy of this Order via electronic mail to EE Omaha Legal Specialist at EEOMALegalSpecialist@paypal.com;

   b) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where AliPay.com Co., Ltd., Ant Financial Services will be able to download a PDF copy of this Order via electronic mail Mr. Di Zhang, Member of the Legal & Compliance Department – IP, at di.zd@alipay.com;

   c) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Alibaba will be able to download a PDF copy of this Order via electronic mail to Chloe He, Alibaba Group at chloe.he@alibaba-inc.com;

   d) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Payoneer Inc. will be able to download a PDF copy of this Order via electronic mail to Payoneer Inc.'s Customer Service Management at customerservicemanager@payoneer.com and Edward Tulin, counsel for Payoneer

      Inc., at Edward.Tulin@skadden.com; and

   e) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PingPong Global Solutions Inc. will be able to download a PDF copy of this Order via electronic mail to Zeng Ni of PingPong Global Solutions Inc.'s Legal Department at xieqt@pingpongx.com and legal@pingpongx.com.

8. Defendants are hereby given notice that they may be deemed to have actual notice of the terms of this Order and any act by them or any one of them in violation of this Order may be considered and prosecuted as in contempt of this Court.

9. The $100,000.00 bond posted by Plaintiff shall remain with the Court until a final disposition of this case or until this Order is terminated.

10. This Order shall remain in effect during the pendency of this action, or until further order of the Court.

11. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two (2) days' notice to Plaintiff or on shorter notice as set by the Court.

**SO ORDERED.**

SIGNED this  13th  day of    November  , 2020, at   6:52   p.m.
New York, New York

                                                    /s/ Laura Taylor Swain
                                                  HON. LAURA TAYLOR SWAIN
                                                  UNITED STATES DISTRICT JUDGE