UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

OFF-WHITE LLC,

             Plaintiff,

      -against-                      No. 20-CV-7894-LTS

BEIJING YINYU TRADING CO., LTD. et al.,

             Defendants.

---------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Plaintiff Off-White LLC (hereinafter "Off-White" or "Plaintiff") moves pursuant to Local Civil Rule 55.2(b) and Federal Rule of Civil Procedure 55(b)(2) for default judgment, a permanent injunction, statutory damages, and a post-judgment asset restraint and transfer against the remaining and defaulted defendants in this action (the "Defaulting Defendants"[1]) upon

---

[1]    The Defaulting Defendants are Beijing Yinyu Trading Co., Ltd., Discover-case Store, Dongguan City Humen Zhongsheng Weaving Factory, Dongguan Huayu Technology Co., Ltd., Dongguan Manxun Clothing Corporation Ltd., Flawless Store, Guangzhou 100 Percent Clothing Co., Ltd., Guangzhou Durcase Wireless Co., Ltd., Guangzhou Ideal Electronic Technology Limted, Guangzhou MC Garment Accessories Co., Ltd., Jiangxi Kaimei Garment Co., Ltd., Newo (Shenzhen) Technology Co., Ltd., Ningbo Haishu Yingli International Trading Co., Ltd., Quality Products Manufacture Co., Ltd, Shenzhen 3 Takins Trading Co., Ltd., Shenzhen Agatha Tech Co., Ltd., Shenzhen Aimax Intelligent Technology Co., Ltd., Shenzhen Ainte Technology Co., Ltd., Shenzhen Aotemao Technology Co., Ltd., Shenzhen Chengyi Hardware Craft Accessories Co., Ltd., Shenzhen Chenhong Gifts Co., Ltd., Shenzhen City Gecool Electronic Technology Limited Company, Shenzhen Downwind Technology Co., Ltd., Shenzhen Fibercheng Electronics Co., Ltd., Shenzhen Haoxi Yang Trading Co., Ltd., Shenzhen Hengyue Gifts Co., Ltd., Shenzhen Jary Technology Co., Ltd., Shenzhen Jezz Life Technology Co., Ltd., Shenzhen Kaileex Technology Co., Ltd., Shenzhen PXB Technology Co., Ltd., Shenzhen Siyuanda Technology Co., Ltd., Shenzhen Wanyang Gift Co., Ltd., Shenzhen XCZH Technology Co., Ltd., Shenzhen Xin Sheng Rong Trading Co., Ltd., Shenzhen Xinyuhongsheng Trade Co., Ltd., Shenzhen Yuefeng Technology Co., Ltd, Shop3484013 Store, Shop5361124 Store, Shop900237396 Store, Sichuan Laiyuanyifang Trading Co., Ltd, Stars ST Glasses Store, WADE GROUP COMPANY LIMITED, Yiwu Guanlong

claims of trademark counterfeiting and trademark infringement, pursuant to 15 U.S.C. sections 1114 through 1117 and 1125.  (Docket entry no. 61.)  The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C sections 1331, 1332, 1338(a)-(b) and 15 U.S.C. sections 1051 et seq. and 1121.  The Court has personal jurisdiction over the Defaulting Defendants because Plaintiff has alleged and proffered evidence that Defaulting Defendants target their business activities toward New York through the operation of online storefronts, through which New York customers can purchase the allegedly infringing products, and of sale and shipment of the allegedly infringing products by some Defaulting Defendants to New York purchasers.  (Docket entry no. 13 ("Complaint") Ex. C; docket entry no. 17 ¶ 26); see also, e.g., WowWee Grp. Ltd. v. Meirly, No. 18-CV-706-AJN, 2019 WL 1375470, at *4 (S.D.N.Y. Mar. 27, 2019) (following those "courts in this district [which have] routinely exercise[d] personal jurisdiction over defendants in analogous cases based only on completed checkout pages" such as those collected in Exhibit C to the Complaint in this case).  Defaulting Defendants have not formally appeared or responded to Plaintiff's claims or the instant motion.

The Court has carefully reviewed Plaintiff's submissions and, for the following reasons, grants in part and denies in part Plaintiff's unopposed motion for default judgment, permanent injunction, statutory damages, and post-judgment asset restraint and transfer.

BACKGROUND

Off-White is a marketer and distributor of a "successful fashion label [ ] specializing in season to season men's and women's lifestyle and high-end streetwear, as well as

_____

Garment Accessories Co., Ltd., Yiwu Kaiwen Plastic Products Co., Ltd., Yiwu Mengshou Electronic Commerce Co., Ltd., Yiwu Youwei Apparel Co., Ltd., Yiwu Zhaoyuan New Materials Co., Ltd. and Zhongshan Caiying Textile Co., Ltd.

shoes, accessories, jewelry, and other ready-made goods." (Complaint at iv. & ¶¶ 7-8.)[2]

Relevant here are Plaintiff's distinctive graphic and logo-heavy designs, specifically its marks

characterized by alternating parallel diagonal lines or two intersecting dual-sided arrows. (Id. ¶

8.) Off-White is the owner and exclusive licensee of the following registered trademarks:

5,119,602 for "OFFWHITE" for a variety of goods in Class 25 with a constructive date of first

use of January 25, 2012; 5,713,397 for "OFF-WHITE" for a variety of goods in Class 25;

5,710,328 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 9; 5,572,836

for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 25; 5,710,287 for

"OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 14; 5,150,712 for  for a

variety of goods in Class 18 and 25; 5,710,288 for  for a variety of goods in Class 14;

5,307,806 for  for a variety of goods in Class 18 and 25; 5,835,552 for  for a variety of

goods in Class 9; 5,387,983 for  for a variety of goods in Class 25; 5,445,222 for  for a

variety of goods in Class 25; 5,800,414 for  for a variety of goods in Class 9 and 25;

5,681,805 for  for a variety of goods in Class 9; and 5,663,133 for  for a variety of goods

in Class 25 (together, the "Off-White Registrations"). (Id. at iv.-v.) Off-White has also applied

for registration of two other marks:  under U.S. Trademark Serial Application No.

88/080,002 for a variety of goods in Class 25 and  under 88/041,456 for a variety of goods in

Class 18 and Class 25 (the "Off-White Applications," and together with the Off-White

---

[2]      The facts cited herein are derived from the Complaint, the well-pleaded factual
allegations of which are deemed admitted, see Fed. R. Civ. P. 8(b)(6), as well as from
uncontroverted documentary evidence filed in support of the instant motion practice.

Registrations, the "Off-White Marks").  (Id.)  Off-White has also gained significant common law trademark rights in the Off-White Marks through use, advertising, and promotion.  (Id. ¶¶ 8-12.) Off-White markets, advertises, and promotes its products through its website, social media, retailer websites, other internet-based and print advertising, and word-of-mouth buzz generated by consumers.  (Id. ¶¶ 12, 14.)

        Defaulting Defendants are third-party merchants who advertise, distribute, offer, sell, and ship their retail products via Alibaba and AliExpress, online marketplaces and e-commerce platforms.  (Id. ¶ 21.)  Defaulting Defendants use their online merchant storefronts to sell and ship products to consumers throughout the world, including the United States, broadly, and New York specifically.  (Id. ¶ 22.)  Plaintiff, through counsel Epstein Drangel LLP, determined that Defaulting Defendants were offering for sale or selling products that use, or are confusingly similar to, Off-White Marks (the "Infringing Products").  (Id. ¶¶ 26, 29-30.) Plaintiff asserts that such behavior infringes Off-White's registered and unregistered trademarks. (Id. ¶¶ 31-38.)

        Plaintiff filed its Complaint on September 24, 2020.  On September 29, 2020, the Court granted Plaintiff's request for a Temporary Restraining Order (docket entry no. 21 (the "TRO")) restraining the Defaulting Defendants' storefronts' service providers, enjoining Defaulting Defendants from selling any products that infringed the Off-White Marks or were counterfeits of Off-White products, and freezing Defaulting Defendants' assets held by specified financial institutions.  On October 14, 2020, Plaintiff served each Defaulting Defendant with the summons, Complaint, TRO, and all papers filed in support of Plaintiff's application for issuance of a preliminary injunction.  (See docket entry no. 26 ¶ 7.)  On October 30, 2020, the Court held a show cause hearing with respect to Plaintiff's application for a preliminary injunction, and

subsequently entered a Preliminary Injunction Order (docket entry no. 42 (the "PI Order"))
enjoining the Defaulting Defendants from infringing upon Plaintiff's rights to Off-White Marks
and products throughout the pendency of this action.

On March 29, 2021, Plaintiff filed an application (docket entry no. 58) for a
Clerk's Certificate of Default against Defaulting Defendants and on March 30, 2021, the Clerk of
the Court issued that Certificate.  (Docket entry no. 60.)  Plaintiff then filed the instant Motion
for Default Judgment, as well as an affidavit and memorandum of law in support of the motion.
(Docket entry nos. 61-63.)[3]

## DISCUSSION

In determining whether to grant a motion for default judgment, the Court first
considers three factors: "(1) whether the defendant's default was willful; (2) whether defendant
has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting
party would suffer as a result of the denial of the motion for default judgment."  Santana v.
Latino Express Restaurants, Inc., 198 F. Supp. 3d 285, 291 (S.D.N.Y 2016) (citation omitted);
see also Guggenheim Cap., LLC v. Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013).

Here, all three factors weigh in favor of granting default judgment.  First,
Defaulting Defendants' failure to respond to Plaintiff's Complaint, and failure to respond to
correspondence from Plaintiff or the Court, are indicative of willful conduct.  See Indymac Bank,

---

[3]     Defendant Jiatianxia Technology (Shenzhen) Co., Ltd. was subsequently dismissed from
the case.  (Docket entry no. 69.)  Defendants GHH11 Store, Chengdu Shangke
Technology Co., Ltd Store, Jiangmen City Sunfei Sports Co., Ltd, Yiwu Hohi
JewelryCo., Ltd, Hangzhou Lin'an Origin Trading Co., Ltd., Yiwu Beyond Belt Limited
Company, and Yiwu Yiming E-Commerce Firm were also voluntarily dismissed pursuant
to Rule 41(a)(1)(A)(i).  (Docket entry nos. 33, 41, 44, 47, 50, 51.)  None of these
defendants is among the Defaulting Defendants subject to this Memorandum Opinion and
Order.

F.S.B. v. Nat'l Settlement Agency, Inc., No. 07-CV-6865-LTS-GWG, 2007 WL 4468652, at *1
(S.D.N.Y. Dec. 20, 2007) (citation omitted) (holding that a party's non-appearance and failure to
respond to a complaint or motion for default judgment indicate willful conduct).  Second,
because Defaulting Defendants have failed to appear or respond to this action, the Court is
unaware of any meritorious defense that Defaulting Defendants could present.  See Bldg. Serv.
32BJ Pension Fund v. 1180 AOA Member LLC, No. 18-CV-12226-LTS-OTW, 2020 WL
70947, at *2 (S.D.N.Y. Jan. 3, 2020).  Third, Plaintiff will be prejudiced if it is denied judgment
by default, as Defaulting Defendants have willfully failed to respond to the Complaint and the
present motion and, without a default judgment, Plaintiff will continue to be prejudiced via lost
profits, impaired reputation, brand dilution, goodwill lost, and the destruction of the inherent
value of the Off-White Marks.  Accordingly, issuance of a default judgment will be appropriate
if "plaintiff has pleaded facts supported by evidence sufficient to establish the defendant's
liability with respect to each cause of action asserted."  Santana, 198 F. Supp. 3d at 291.  The
Court now turns to this inquiry.

Trademark Infringement

To prevail on Lanham Act claims, Plaintiffs must proffer ownership of a valid
mark and "prove that the defendant's use of the allegedly infringing mark would likely cause
confusion as to the origin or sponsorship of the defendant's goods with plaintiff's goods."
Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 114 (2d Cir. 2009).

*Validity of Plaintiff's Marks*

Plaintiff has proffered ownership of valid marks.  A certificate of registration with
the United States Patent and Trademark Office is prima facie evidence of a trademark's validity
and entitlement to protection.  Lane Cap. Mgmt., Inc. v. Lane Capital Mgmt, Inc., 192 F.3d 337,

345 (2d Cir. 1999).  Plaintiff has established ownership of its registered marks by proffer of

certificates of registration for the Off-White Registrations.  (Complaint Ex. B.)  Plaintiff has also

proffered ownership of the unregistered marks for which Plaintiff has submitted trademark

applications (e.g.,       ) and, accepting Plaintiff's factual allegations as true, established that they

are highly distinctive and have acquired a secondary meaning.  (Complaint ¶¶ 15-16); see also

Off-White, LLC v. Alins, No. 19-CV-9593-AT, 2021 WL 4710785, at *2 (S.D.N.Y. Oct. 8,

2021) (considering the same unregistered marks as are proffered here, and explaining that they

are "protectible as distinctive and having acquired secondary meaning").

    *Likelihood of Confusion*

          Plaintiff has also proffered evidence that the Defaulting Defendants' products

offered for sale in commerce would likely cause confusion as to the origin or sponsorship of the

Defaulting Defendants' goods with Plaintiff's goods.  To assess the likelihood of confusion,

courts in this District generally analyze the factors outlined in Polaroid Corp. v. Polarad Elecs.

Corp., 287 F.2d 492, 495 (2d Cir. 1961).  See, e.g., Lois Sportswear, U.S.A., Inc. v. Levi Strauss

& Co., 799 F.2d 867, 871-76 (2d Cir. 1986) (analyzing the Polaroid factors).  However, in cases

involving counterfeit items, a full Polaroid analysis is not necessary "because counterfeits, by

their very nature, cause confusion."  Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d

284, 287 (S.D.N.Y. 2003).  The Lanham Act defines a counterfeit as a "spurious mark which is

identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C.A. § 1127

(Westlaw P.L. through 117-80).

          The Court has compared Plaintiff's marks to Defaulting Defendants' allegedly

infringing marks and finds that most of the Defaulting Defendants offered for sale products

bearing spurious marks identical with, or substantially indistinguishable from, Plaintiff's

registered marks.  As to that majority of Defaulting Defendants—the "Counterfeiting Defendants"[4]—no Polaroid analysis is necessary, and Plaintiff has established the elements of trademark infringement.

The remaining Defaulting Defendants fall into two categories.  First, Defaulting Defendants Guangzhou 100 Percent Clothing Co., Ltd., Sichuan Laiyuanyifang Trading Co., Ltd, and Yiwu Guanlong Garment Accessories Co., Ltd. have used only one of Plaintiff's unregistered marks () in their products.  (See Complaint Ex. C at 83, 452, 485.)  Second, Defaulting Defendants Beijing Yinyu Trading Co., Ltd., Discover-case Store, Shenzhen Haoxi Yang Trading Co., Ltd., Shenzhen XCZH Technology Co., Ltd., Shop3484013 Store, WADE GROUP COMPANY LIMITED, Yiwu Kaiwen Plastic Products Co., Ltd. (together with Guangzhou 100 Percent Clothing Co., Ltd., Sichuan Laiyuanyifang Trading Co., Ltd, and Yiwu Guanlong Garment Accessories Co., Ltd., the "Non-Counterfeiting Defendants") offered for sale products which shared significant characteristics with, or included components or partial images

---

[4]     The Counterfeiting Defendants are Dongguan City Humen Zhongsheng Weaving Factory, Dongguan Huayu Technology Co., Ltd., Dongguan Manxun Clothing Corporation Ltd., Flawless Store, Guangzhou Durcase Wireless Co., Ltd., Guangzhou Ideal Electronic Technology Limted, Guangzhou MC Garment Accessories Co., Ltd., Jiangxi Kaimei Garment Co., Ltd., Newo (Shenzhen) Technology Co., Ltd., Ningbo Haishu Yingli International Trading Co., Ltd., Quality Products Manufacture Co., Ltd, Shenzhen 3 Takins Trading Co., Ltd., Shenzhen Agatha Tech Co., Ltd., Shenzhen Aimax Intelligent Technology Co., Ltd., Shenzhen Ainte Technology Co., Ltd., Shenzhen Aotemao Technology Co., Ltd., Shenzhen Chengyi Hardware Craft Accessories Co., Ltd., Shenzhen Chenhong Gifts Co., Ltd., Shenzhen City Gecool Electronic Technology Limited Company, Shenzhen Downwind Technology Co., Ltd., Shenzhen Fibercheng Electronics Co., Ltd., Shenzhen Hengyue Gifts Co., Ltd., Shenzhen Jary Technology Co., Ltd., Shenzhen Jezz Life Technology Co., Ltd., Shenzhen Kaileex Technology Co., Ltd., Shenzhen PXB Technology Co., Ltd., Shenzhen Siyuanda Technology Co., Ltd., Shenzhen Wanyang Gift Co., Ltd., Shenzhen Xin Sheng Rong Trading Co., Ltd., Shenzhen Xinyuhongsheng Trade Co., Ltd., Shenzhen Yuefeng Technology Co., Ltd, Shop5361124 Store, Shop900237396 Store, Stars ST Glasses Store, Yiwu Mengshou Electronic Commerce Co., Ltd., Yiwu Youwei Apparel Co., Ltd., Yiwu Zhaoyuan New Materials Co., Ltd. and Zhongshan Caiying Textile Co., Ltd.

of, Plaintiff's registered marks, accompanied by text in the listing of the product describing the

product as an "Off-White," "Off White," "OFF OW," or (in the case of Shop3484013 Store)

"Off" product.  For example, defendant Discover-case Store offered for sale a cell phone case

with the word "OFF" on it, and defendants Shenzhen Haoxi Yang Trading Co., Ltd. and

Shop3484013 Store offered for sale cell phone cases with a partial image of a variant of Off-

White's trademarked crossed arrows design, with the word "White" above that partial image:

|  |  |  |
|---|---|---|
| "fashion OFF OW white soft case for iphone 11 pro x xs max xr 8 7 6 6s plus SE 2 matte silicone phone cover coque fundas capa" | "2020 New W 3D Stereo Pattern IMD OFF White Thickness Silicone Phone Case for iPhone 11 XR XS MAX SE2020 8 Plus X/XS Phone Cover" | "Off Square arrow chrysanthemum Soft Silicon phone Case for iphone 7 8 X XS XR MAX 11 Pro Plus 2020 SE White Anti-fall cover capa" |

(Complaint Ex. C at 30, 302, 426.)

To analyze whether the Non-Counterfeiting Defendants' sales of such products

would likely cause confusion with Plaintiff's, the Court applies the factors set forth in Polaroid.

Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC, 823 F.3d 153, 160 (2d

Cir. 2016).  The Polaroid factors are:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of
> the products and their competitiveness with one another; (4) evidence that
> the senior user may "bridge the gap" by developing a product for sale in
> the market of the alleged infringer's product; (5) evidence of actual
> consumer confusion; (6) evidence that the imitative mark was adopted in
> bad faith; (7) respective quality of the products; and (8) sophistication of
> consumers in the relevant market.

Id. at 165 (citing Starbucks, 588 F.3d at 115).  The Court considers each factor in turn.

First, both Off-White's registered and unregistered marks are strong and worthy of protection (Complaint ¶¶ 12, 15), as those marks would have a "tendency to uniquely identify the source of the product."  Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 384 (2d Cir. 2005).  This factor weighs in favor of the Plaintiff.

Second, "[i]n assessing similarity [of marks], courts look to the overall impression created by the logos and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers."  Star Indus., 412 F.3d at 386 (citation omitted).  Here, the Non-Counterfeiting Defendants offered for sale on third-party websites reproductions of partial marks of the Plaintiff and/or products with designs reminiscent of Plaintiff's marks, accompanied by text in the listing of the product describing the product as an "Off-White" product (or language to that effect).  (Complaint Ex. C.)  This text would make it harder for a consumer to differentiate between real and infringing products.  Accordingly, the similarity of the marks weighs in favor of the Plaintiff.

"The third Polaroid factor—proximity of the products and their competitiveness with one another—looks to the nature of the products themselves and the structure of the relevant market."  JLM Couture, Inc. v. Gutman, No. 20-CV-10575-LTS-SLC, 2021 WL 827749, at *17 (S.D.N.Y. Mar. 4, 2021) (subsequent history omitted) (citing Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 480 (2d Cir. 1996)).  The degree of proximity considered is the likelihood that consumers may be confused as to Plaintiff's affiliation with the products.  Id.  In this case, the product types are comparable and the relevant market is online retail sales, resulting in an overlap of the class of consumers to whom the goods are sold.  (Complaint ¶¶ 12,

31-34.)  This proximity weighs in favor of a likelihood of confusion as to whether Plaintiff is

affiliated with Defaulting Defendants' products.

   The fourth <u>Polaroid</u> factor, bridging the gap, considers the likelihood or perceived

likelihood that the plaintiff and defendant would enter the same market.  In this case, the gap has

already been bridged since the parties are competing in the same online market for apparel,

accessories, and other ready-made goods with logo-heavy designs, albeit at different price points.

<u>See</u> <u>Akiro LLC v. House of Cheatham, Inc.</u>, 946 F. Supp. 2d 324, 335 (S.D.N.Y. 2013)

(affirming that "all aspects of the products, including price, style, intended use, target clientele,

typical distribution channels, and others" should be considered).  This factor, too, weighs in

favor of Plaintiff.

   Plaintiff does not proffer any evidence relevant to the fifth <u>Polaroid</u> factor—actual

consumer confusion.  Given the Defaulting Defendants' default, the Court does not have

sufficient evidence to make a finding as to this factor.

   The sixth <u>Polaroid</u> factor, whether the imitative mark was adopted in bad faith,

"considers whether the defendant adopted its mark with the intention of capitalizing on [the]

plaintiff's reputation and goodwill and [on] any confusion between his and the senior user's

product." <u>W.W.W. Pharm. Co., Inc. v. Gillette Co.</u>, 984 F.2d 567, 575 (2d Cir. 1993) (internal

quotation marks omitted).  Given Defaulting Defendants' default, this Court is required to accept

Plaintiff's factual allegations as true.  <u>Finkel v. Romanowicz</u>, 577 F.3d 79, 84 (2d Cir. 2009).

Accordingly, this Court accepts Plaintiff's allegation that Defaulting Defendants were intending

to capitalize on Plaintiff's reputation and goodwill through consumer confusion between the

products.  As such, this factor also weighs in favor of Plaintiff.  The use of Plaintiff's trademark

in the captions of the goods offered for sale is corroborative of Plaintiff's allegation regarding Defaulting Defendants' intent.

The seventh factor, respective quality of the products, "is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." Star Indus., 412 F.3d at 389 (citation omitted). Here, Plaintiff has not proffered evidence of the comparative quality of Defaulting Defendants' goods. Accordingly, there is insufficient evidence for this factor to weigh in favor of any party. See id. (holding that Polaroid factor seven was "at most evenly balanced" where the record was insufficient to find "either product is markedly superior in quality" even though "Georgi's vodka was much cheaper than Bacardi's rum"); Trs. of Columbia Univ. v. Columbia/HCA Healthcare Corp., 964 F. Supp. 733, 748 (S.D.N.Y. 1997) (holding that the seventh factor was neutral where no evidence of the defendant's product's quality was presented).

Lastly, in considering the sophistication of consumers under the eighth factor, the Court "must evaluate the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods[.]" Trs. of Columbia Univ., 964 F. Supp. at 748 (citation omitted). There is no evidence in the record as to the sophistication of consumers in this market. Thus, this factor does not weigh in favor of or against a likelihood of confusion between Plaintiff's and Defaulting Defendants' goods.

Taken together, five of the Polaroid factors weigh in favor of a likelihood of confusion while three factors are neutral. Accordingly, the Court finds that consumer confusion is likely to result from the Non-Counterfeiting Defendants' use of Plaintiff's unregistered marks, and their use of partial representations of Plaintiff's name and marks.

Accordingly, Plaintiff is entitled to a default judgment, as against all the Defaulting Defendants, on its trademark infringement claims.

Permanent Injunction

Beyond succeeding on the merits—as Plaintiff has—to obtain a permanent injunction, Plaintiff must also demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  eBay Inc. v. MercExchangr, L.L.C., 547 U.S. 388, 391 (2006).

In this Circuit, courts hold that irreparable harm "exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark."  Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc., 754 F.2d 91, 95 (2d Cir. 1985).  Here, given the likelihood of confusion between Plaintiff's and Defaulting Defendants' products, Plaintiff is unable to control the impression consumers have of its goods.  Plaintiff cannot control the reputation of its trademarks if Defaulting Defendants are permitted to continue selling the infringing products.  Accordingly, "irreparable harm exists as a result of that loss of control over the reputation and goodwill associated with Plaintiff['s] trademarks."  Ideavillage Prod. Corp. v. Liuzhou Weimao Mobile Accessory Co., No. 20-CV-4997-LTS, 2021 WL 3621788, at *5 (S.D.N.Y. Aug. 16, 2021); see also Int'l Council of Shopping Ctrs., Inc. v. Glob Infotech LLC, No. 18-CV-8856-AJN, 2019 WL 2004096, at *5 (S.D.N.Y. May 7, 2019) ("Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither calculable nor precisely compensable." (citation omitted)).

Next, the Court turns to whether remedies at law are adequate to compensate for this loss of trademark control.  "A court may infer from a defendant's default that it is willing to, or may[,] continue its infringement."  <u>Pearson Educ., Inc. v. Vergara</u>, No. 09-CV-6832-JGK-KNF, 2010 WL 3744033, at *4 (S.D.N.Y. Sept. 27, 2010), <u>report and recommendation adopted</u>, No 09-CV-6832-JGK-KNF (S.D.N.Y. May 12, 2011).  Here, Defaulting Defendants have defaulted.  The Court has no evidence which indicates Defaulting Defendants will cease their infringing activities on Plaintiff's trademarks without this Court's intervention.  Moreover, "monetary damages are also inadequate to compensate Plaintiff[] for the reputational harm [it] [has] suffered and may continue to suffer."  <u>Spin Master Ltd. v. 158</u>, 463 F. Supp. 3d 348, 376 (S.D.N.Y. 2020), <u>adhered to in part on reconsideration</u>, No. 18-CV-1774-LJL, 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020).  Thus, the Court finds that Plaintiff has no adequate remedy at law.

The balance of equities also favors Plaintiff.  Defaulting Defendants have not identified any hardships for the Court to consider.  Indeed, "[i]t is axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product."  <u>WPIX, Inc. v. ivi, Inc.</u>, 691 F.3d 275, 287 (2d Cir. 2012) (citation omitted).  Moreover, injunctive relief would only require Defaulting Defendants to do what the Lanham Act already requires of them.  Conversely, Plaintiff's goodwill, reputation, and financial success would all be harmed by continued production and sales of infringing products.

Lastly, the public interest would be served by granting injunctive relief.  Enjoining Defaulting Defendants will protect consumers from being deceived or defrauded in their purchase of infringing products.  Additionally, the public interest is furthered by protecting

trademarks.  Accordingly, Plaintiff is entitled to a permanent injunction prohibiting Defaulting

Defendants from their unlawful infringement of the Off-White Marks.

Damages

Plaintiff requests an award of $75,000 per Defaulting Defendant in statutory

damages pursuant to 15 U.S.C section 1117(c).

The Lanham Act allows a plaintiff to seek statutory damages for use of a

counterfeit mark between $1,000 and $200,000, or if the infringement was willful, up to

$2,000,000 per mark.  15 U.S.C.A. § 1117(c) (Westlaw P.L. through 117-80).  "Because the

Lanham Act does not explicitly provide guidelines for courts to use in determining an

appropriate award, [ ] courts often have looked for guidance to the better developed case law

under the Copyright Act, 17 U.S.C. section 504(c), which permits an award of statutory damages

for willful copyright infringement."  Ideavillage Prod. Corp., 2021 WL 3621788, at *6 (internal

quotation marks and citations omitted) (citing Louis Vuitton Malletier, S.A. v. LY USA, No. 06-

CV-13463-AKH, 2008 WL 5637161, at *1 (S.D.N.Y. Oct. 3, 2008) and All-Star Mktg. Grp.,

LLC v. Media Brands Co., 775 F. Supp. 2d 613, 622 (S.D.N.Y. 2011)).  Applying this

framework to Lanham Act cases, courts typically consider the following factors:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the
> plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others
> besides the defendant; (5) whether the defendant's conduct was innocent or
> willful; (6) whether a defendant has cooperated in providing particular records
> from which to assess the value of the infringing material produced; and (7) the
> potential for discouraging the defendant.

All-Star Mktg. Grp., 775 F. Supp. 2d at 622 (quoting Kenneth Jay Lane, Inc. v. Heavenly

Apparel, Inc., No. 03-CV-2132-GBD-KNF, 2006 WL 728407, at *6 (S.D.N.Y. Mar. 21, 2006)).

The Counterfeiting Defendants counterfeited Plaintiff's registered marks.

Accordingly, statutory damages are proper as to those Defaulting Defendants, particularly given

Defaulting Defendants' willfulness and default, which makes alternative relief provided by 15 U.S.C section 1117 impossible.  See 15 U.S.C.A. § 1117.  After careful consideration of the relevant factors, the Court finds that, as to the Counterfeiting Defendants, the requested award of $75,000 in damages per infringement is warranted.  See, e.g., Coach, Inc. v. McMeins, No. 11-CV-3574-BSJ-JCF, 2012 WL 1071269, at *4 (S.D.N.Y. Mar. 9, 2012), report and recommendation adopted, No. 11-CV-3574-BSJ-JCF, 2012 WL 1080487 (S.D.N.Y. Mar. 30, 2012) (awarding $200,000 per trademark infringed for goods sold online, accounting for both compensatory and punitive damages).[5]  Therefore, the Court hereby grants Plaintiff $75,000 in statutory damages against each Counterfeiting Defendant.

As to the Non-Counterfeiting Defendants, however, section 1117(c) permits no such statutory award.  That section provides that the Court may award statutory damages "[i]n a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title)[.]"  28 U.S.C. section 1117(c).  Section 1116(d) defines a counterfeit mark to mean, as relevant here, "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office," and section 1127 defines a "counterfeit" as a "spurious mark which is

---

[5]     With respect to factors one, two, and six, because of Counterfeiting Defendants' default, Plaintiff has not been able to engage in discovery of Counterfeiting Defendants' expenses saved or profits reaped or the concomitant revenues lost by Plaintiff.  (See docket entry no. 63 at 10-11; docket entry no. 62 ¶¶ 24-30.)  The third factor—the value of Plaintiff's marks—also weighs in favor of increased statutory damages awards, as Plaintiff has proffered evidence of those marks' "worldwide recognition and success," as well as "consumer recognition, awareness, and goodwill" in those marks.  (Docket entry no. 63 at 11; see also Complaint ¶¶ 13-17.)  As to factor four, deterring future similar conduct "requires a substantial award."  Louis Vuitton Malletier, 2008 WL 5637161, at *2.  Factor five, willfulness, also suggests a substantial award, "because an innocent party would presumably have made an effort to defend itself[.]"  Chloe v. Zarafshan, No. 06-CV-3140-RJH-MHD, 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009).  Finally, as to factor seven, Counterfeiting Defendants' use of name and stylistic marks identical or substantially indistinguishable from Plaintiff's, along with their default, suggests that they are unlikely to be deterred by a small damage award.

identical with, or substantially indistinguishable from, a registered mark."  28 U.S.C. §§ 1116(d)(1)(B)(i), 1127.  Because, according to Plaintiff's proffers, the Non-Counterfeiting Defendants have either infringed an unregistered trademark, or have infringed a registered trademark but not through the use of a mark that is "identical with, or substantially indistinguishable from, a registered mark," Plaintiff has not met its burden to show that it is entitled to statutory damages as against those defendants, and the Court denies Plaintiff's request for statutory damages as to those defendants.  See Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co., 630 F. Supp. 2d 255, 261 (E.D.N.Y. 2008) ("Statutory damages are available only for counterfeiting of a registered mark. . . . Since plaintiff seeks damages sustained between 2003 and 2006, a period during which its mark was unregistered, statutory damages are unavailable."); Momentum Luggage & Leisure Bags v. Jansport, Inc., No. 00-CV-7909-DLC, 2001 WL 135702, at *1 (S.D.N.Y. Feb. 16, 2001) (granting motion to dismiss claim for statutory damages arising from infringement of unregistered trademarks).

Post-Judgment Asset Restraint and Transfer

Plaintiff requests a post-judgment continuance of the pre-judgment asset restraint and a transfer of these assets pursuant to Rule 64, Rule 65, and 15 U.S.C. section 1116(a). Alternatively, Plaintiff requests that the Court, pursuant to C.P.L.R. section 5225, allow Plaintiff to serve a restraining notice pursuant to C.P.L.R. section 5222.  The court denies the former and grants the latter.

The request for relief pursuant to Rule 64, Rule 65, and 15 U.S.C. section 1116(a) runs afoul of Federal Rule of Civil Procedure 69, which requires that execution of money judgments comport with the procedure of the forum state unless the governing federal statute provides otherwise.  Fed. R. Civ. P. 69(a)(1); see Off-White, 2021 WL 4710785, at *6; Allstar

Mktg. Grp., LLC v. 158, No. 1:18-CV-4101-GHW, 2019 WL 3936879, at *2 (S.D.N.Y. Aug. 20,

2019); see also Tiffany (NJ) LLC v. QI Andrew, No. 10-CV-9471-KPF, 2015 WL 3701602, at

*12 (S.D.N.Y. June 15, 2015) ("[T]he Court is unconvinced that a Rule 65 injunction is an

appropriate vehicle for the postjudgment restraint. A plaintiff's ordinary recourse upon securing

a money judgment is to look to postjudgment remedies provided by Fed. R. Civ. P. 69 and state

law."). Since the Lanham Act does not provide an exception, the Court turns to the relevant New

York C.P.L.R. sections 5222 and 5225.

        "C.P.L.R. section 5222 permits an attorney for a judgment creditor to issue a

restraining notice against a person in possession or custody of property in which the judgment

debtor has an interest." Ideavillage Prod. Corp., 2021 WL 3621788, at *7 (citing N.Y. C.P.L.R.

§ 5222(a)). Section 5225 allows courts to require a third party to pay a judgment creditor from

funds belonging to a judgment debtor "[u]pon a special proceeding commenced by the judgment

creditor." N.Y. C.P.L.R. § 5225(b). This special proceeding requirement is satisfied where a

judgment creditor brings a motion pursuant to Rule 69(a) against the third party. Ideavillage

Prod. Corp., 2021 WL 3621788, at *7 (collecting cases). However, Plaintiff has not brought a

motion against relevant third parties pursuant to N.Y. C.P.L.R. section 5225. Thus, Plaintiff's

request to execute a money judgment against relevant third parties does not accord with state

procedure and cannot be granted. Accordingly, Plaintiff's request is denied, without prejudice to

Plaintiff's issuance of restraining notices pursuant to N.Y. C.P.L.R. 5222 and any later

applications pursuant to N.Y. C.P.L.R. 5225.

Continuation of Pre-Judgment Asset Restraint

        Plaintiff requests a continuance of the pre-judgment asset restraint for a period of

thirty (30) days after this Court enters default judgment. Such relief is unnecessary, as Rule

62(a) provides that "[e]xcept as provided in Rule 62(c) and (d), execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, <u>unless the court orders otherwise</u>." Fed. R. Civ. P. 62(a) (emphasis added).  The Court recognizes the risk that judgment debtors' assets may be concealed or dissipated while Plaintiff seeks to issue restraining notices pursuant to N.Y. C.P.L.R. 5222.  <u>Accord</u> <u>Spin Master</u>, 463 F. Supp. 3d at 385; <u>Ideavillage Prod. Corp.</u>, 2021 WL 3621788, at *8.  Accordingly, Plaintiff is hereby relieved from the 30-day stay and may execute upon the judgment immediately.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is granted in part and denied in part.  Plaintiff's request for a permanent injunction is granted to the following extent:

1. Defaulting Defendants, their respective officers, agents, servants, employees, successors and assigns and all persons acting in concert with or under the direction of Defaulting Defendants (regardless of whether they are located in the United States or abroad), who receive actual notice of this Order are permanently enjoined and restrained from:

    A. manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Infringing Products or any other products bearing one or more of the Off-White Marks and/or marks that are confusingly similar to, identical to and constitute a counterfeiting and/or infringement of the Off-White Marks;

    B. directly or indirectly infringing in any manner any of Plaintiff's Off-White Marks;

C.  using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Off-White Marks to identify any goods or services not authorized by Plaintiff;

D.  using any of Plaintiff's Off-White Marks or any other marks that are confusingly similar to the Off-White Marks on or in connection with Defaulting Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Infringing Products;

E.  using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defaulting Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defaulting Defendants and Defaulting Defendants' commercial activities and Plaintiff;

F.  secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Infringing Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to their User Accounts, Merchant Storefronts or Defaulting Defendants' Assets

and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products;[6]

G. effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, User Account, Merchant Storefront or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

H. knowingly instructing, aiding or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(A) through 1(G) above.

2. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defaulting Defendants must deliver up for destruction to Plaintiff any and all Infringing Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defaulting Defendants that infringe Plaintiff's trademarks, copyrights or other rights in the Off-White Marks, or

---

[6] "User Accounts" refers to websites and any and all accounts with online marketplace platforms such as Alibaba and AliExpress, held by or associated with Defaulting Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them. "Merchant Storefronts" refers to User Accounts through which Defaulting Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Infringing Products, which are held by or associated with Defaulting Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them. "Defaulting Defendants' Assets" refer to money, securities or other property or assets of Defaulting Defendants (whether said assets are located in the U.S. or abroad).

bear any marks or artwork that are confusingly or substantially similar to the Off-White Marks pursuant to 15 U.S.C. section 1118.

Plaintiffs' request for statutory damages is granted in the amount of $75,000.00 against each of defendants Dongguan City Humen Zhongsheng Weaving Factory, Dongguan Huayu Technology Co., Ltd., Dongguan Manxun Clothing Corporation Ltd., Flawless Store, Guangzhou Durcase Wireless Co., Ltd., Guangzhou Ideal Electronic Technology Limted, Guangzhou MC Garment Accessories Co., Ltd., Jiangxi Kaimei Garment Co., Ltd., Newo (Shenzhen) Technology Co., Ltd., Ningbo Haishu Yingli International Trading Co., Ltd., Quality Products Manufacture Co., Ltd, Shenzhen 3 Takins Trading Co., Ltd., Shenzhen Agatha Tech Co., Ltd., Shenzhen Aimax Intelligent Technology Co., Ltd., Shenzhen Ainte Technology Co., Ltd., Shenzhen Aotemao Technology Co., Ltd., Shenzhen Chengyi Hardware Craft Accessories Co., Ltd., Shenzhen Chenhong Gifts Co., Ltd., Shenzhen City Gecool Electronic Technology Limited Company, Shenzhen Downwind Technology Co., Ltd., Shenzhen Fibercheng Electronics Co., Ltd., Shenzhen Hengyue Gifts Co., Ltd., Shenzhen Jary Technology Co., Ltd., Shenzhen Jezz Life Technology Co., Ltd., Shenzhen Kaileex Technology Co., Ltd., Shenzhen PXB Technology Co., Ltd., Shenzhen Siyuanda Technology Co., Ltd., Shenzhen Wanyang Gift Co., Ltd., Shenzhen Xin Sheng Rong Trading Co., Ltd., Shenzhen Xinyuhongsheng Trade Co., Ltd., Shenzhen Yuefeng Technology Co., Ltd, Shop5361124 Store, Shop900237396 Store, Stars ST Glasses Store, Yiwu Mengshou Electronic Commerce Co., Ltd., Yiwu Youwei Apparel Co., Ltd., Yiwu Zhaoyuan New Materials Co., Ltd. and Zhongshan Caiying Textile Co., Ltd., and denied as to the other remaining defendants.  Post-judgment interest shall accrue at the legal rate from the date of the judgment pursuant to 28 U.S.C section 1961.  Plaintiff's request for an order restricting and transferring Defaulting Defendants' assets held by third parties is denied without

prejudice to use of asset restraint and judgment execution measures in compliance with applicable state procedures.  Plaintiff is relieved from the 30-day stay pursuant to Federal Rule of Civil Procedure 62(a).

Any failure by Defaulting Defendants to comply with the terms of this Memorandum Opinion and Order shall be deemed contempt of Court, subjecting Defaulting Defendants to contempt remedies to be determined by the Court, including fines and seizure of property.  This Court shall retain jurisdiction over this matter and the parties in order to construe and enforce this Memorandum Opinion and Order.

After thirty days from the date of this Memorandum Opinion and Order have passed, Plaintiff is directed to prepare and file a proposed order, in a form authorized by the Court's Finance/Cashier Department, releasing the security bond posted by Plaintiff in connection with the TRO and PI Order.

This Memorandum Opinion and Order resolves docket entry no. 61.

The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

SO ORDERED.

Dated: New York, New York
      March 22, 2022

               /s/ Laura Taylor Swain
             LAURA TAYLOR SWAIN
             Chief United States District Judge